## BOARD OF COUNTY SUPERVISORS OF PRINCE WILLIAM COUNTY, VIRGINIA, Appellee,

v.

## SCOTTISH & YORK INSURANCE SERVICES, INC., d/b/a Scottish & York Int'l Insurance Group and Lincoln Insurance Company, Appellants.

### No. 84-1974.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1985.

Decided June 5, 1985.

Rehearing Denied July 15, 1985.

Paul T. Cuzmanes, Washington, D.C. (Walter J. Smith, Jr.; David Florin; Wilson, Elser, Edelman & Dicker, Washington, D.C., on brief), for appellants.

John H. Foote, County Atty., Manassas, Va. (James E. Barnett, Jr., Asst. County Atty., Manassas, Va., on brief), for appellee.

Before SPROUSE and WILKINSON, Circuit Judges, and KAUFMAN, Chief United States District Judge for the District of Maryland, sitting by designation.

SPROUSE, Circuit Judge:

This appeal involves a suit by the Board of County Supervisors of Prince William County, Virginia, against Scottish & York Insurance Services, Inc. The insurance company had issued a policy to Prince William County which, among other things, covered the County's potential liability for "bodily injury" and "personal injury" illegally inflicted by its law enforcement officers. Prior to the action involved in this appeal, inmates of the Prince William County jail obtained a judgment against Prince William County for unconstitutional prison conditions which violated their eighth and fourteenth amendment rights. Judgment in the inmates' action was entered on a general jury verdict which, in turn, was rendered after the court instructed the jury that it could find liability on any or all of six separate theories, three of which included bodily injury. Prince William County made demand on Scottish & York for the amount of the verdict. Scottish & York denied coverage on the ground that it had insured Prince William County only for its liability for bodily and personal injury and that, because the verdict was based on neither, it was not obligated to pay the County. Prince William County then brought this action. The district court, on cross motions, granted summary judgment to the County on the ground that "there is no way to determine from the verdict that at least part of the award wasn't based upon those three elements" of bodily harm. As it is not possible to determine from the general verdict the theories upon which the jury based liability or damages, we reverse. We remand, how-

ever, for a determination of whether the insurance policy covers the incurred liability under its personal injury clause.

## I.

The facts of this case are largely undisputed. Scottish & York insured Prince William County for all sums the County was "legally obligated to pay" as damages for bodily or personal injury inflicted by its law enforcement employees. The insurance contract states that " 'bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;" personal injury includes false arrest, unlawful detention, and false imprisonment. Scottish & York contends that the jury's verdict in favor of the inmates was based upon emotional and psychological injuries, which the parties concede are not included in the policy definition of bodily injury.[1] Prince William County, on the other hand, argues that the jury's verdict in the inmates' action was based on bodily injury as defined in the contract. The County also contends that the judgment for the inmates was based on personal injury. As the district court did not consider the personal injury issue but determined that the jury's verdict may have been based on bodily injury, the dispute, at this point, revolves around the issue of whether the jury's award was based on bodily injury.

The disputed judgment resulted from an action brought by a class of approximately 7,000 present and former inmates against Prince William County. They alleged that numerous conditions in the county jail violated their eighth and fourteenth amendment rights. The class was divided into two subclasses: pretrial detainees alleging fourteenth amendment due process violations and convicts alleging cruel and unusual punishment in violation of the eighth amendment. The essence of the inmates' case was that they, as a class, had suffered compensable injury arising out of the unconstitutional conditions in which they had been confined during an eighteen-month period from 1980 to 1982. Prince William County was represented in the suit by counsel provided by Scottish & York under reservation of rights.

The district court bifurcated the trial into liability and damages stages. During the liability stage, the inmates presented substantial evidence that there had existed a pervasive atmosphere of violence in the jail, directly resulting in both physical and psychological injury to members of the class. The district court instructed the jury that it might find that the inmates' constitutional rights were violated if any one or more of the following six conditions existed at the county jail:

One, that the facility was so overcrowded as to constitute a violation of constitutional standards.

Two, that the provision for security is so inadequate and the system of classification of inmates and assignment to cells and cell blocks is also so inadequate that they permit physical and sexual assaults and the threat of such assaults.

[Three,] [t]hat the physical conditions of the facility are so inimical to the general health and safety of the inmates that they constitute a violation of constitutional standards.

Four, that the provision for medical care is so inadequate as to constitute a violation of constitutional standards....

[F]ive, that the confinement in cell blocks without any physical recreational activities constitutes a violation of constitutional standards.

[S]ix, that ... plaintiffs ... are denied due process because they do not have access to the courts.

At the conclusion of the liability trial, the jury returned a general verdict in favor of

---

1. As a general proposition, we would not necessarily have reached this conclusion. The parties, however, agree on this limitation of the meaning of bodily injury in the involved insur-ance policy, and in the absence of any indication to the contrary, we accept their interpretation.

the inmates and against Prince William County.

At the damages trial, the inmates produced only one witness, a psychologist, who previously had testified at the liability stage. His testimony on damages was presented by introducing the transcript from the liability trial. He had interviewed sixteen randomly chosen inmates for one and one-half hours each about the impact of the jail's conditions on them. He also toured the cell blocks for about two hours, talking with various inmates, many of whom he had not selected to interview. When asked to give specific examples of injurious consequences of the jail's conditions, the psychologist testified to a "high level of tension," which was "explosive in nature" and "incident producing." Such conditions produced "extreme concern about one's own well-being," "bitterness and resentment," and a feeling of "losing control of ones' [sic] self." The psychologist specifically said that he was "not testifying to 'x' amount of medical incidents" or to " 'x' amount of violence [sic] incidents," but rather to the "impact of those conditions upon [the inmates]." Nevertheless, he testified that five out of the sixteen inmates whom he had interviewed had been hospitalized for injuries that resulted from fights within the jail.

At the conclusion of the damages trial, the district court reviewed for the jury the six conditions considered during its liability deliberations. The court then instructed the jury to recall which of the six conditions it had found to violate the prisoners' rights and to assess a monetary penalty appropriate to the injury suffered from those conditions. The court expressly cautioned the jury to structure its award only on actual damages. The court did not define actual damages but instructed the jury that in determining actual damages it "may consider any pain, suffering, and mental anguish" inflicted upon the inmates. The court added:

Now, ladies and gentlemen, to bring this into a little sharper focus for you, the thrust of the two subclasses case is that by being subjected to the unconsti-

tutional conditions which you found, that members of the subclass suffered a form of psychiatric or psychological or emotional harm, and they claim that that psychiatric or emotional or psychological harm was common to the class and you must determine that that is the case in your deliberations.

The district court later reiterated that the "thrust of plaintiffs' case" is that the mere subjection to conditions at the jail caused them harm. In assessing damages, it allowed the jury to consider evidence from both the damages and liability trials. That evidence included testimony of physical injuries suffered as a result of the jail's conditions as well as the psychologist's testimony of psychological injuries. The jury awarded the inmates $210,000—$170,000 to the subclass of pretrial detainees and $40,000 to the subclass of convicts.

II.

At the summary judgment hearing in the instant action, the Prince William County contended that because the jury could have rested its general verdict for the inmates on any one or more of the six conditions, it must be assumed that the jury rested it on any and all of the conditions involving actual physical harm. It argued that the totality of the jury instructions, coupled with substantial testimony of pervasive bodily injury among the inmates adduced during the liability trial permitted the jury to base a verdict on both physical and emotional injuries.

The district court agreed with Prince William County stating:

At least three of the elements that I instructed the jury on that they could consider awarding damages to the class: Inadequate security leading to physical and sexual assaults, conditions inimical to health, and poor medical care involved conditions of actual physical harm.

Moreover, it was a general verdict, and there is no way to determine from the verdict that at least a part of the award wasn't based upon those three elements.

Upon this reasoning, the district court granted summary judgment to Prince William County. The district court erred.

The problem presented both to the district court and to this court on appeal is the impossibility of winnowing out the specific grounds upon which the jury based its general verdict where it was instructed that it could base liability on any one or more of six different theories. Although we have not previously faced this issue in an insurance coverage context, in *C.B. Marchant Co., Inc. v. Eastern Foods, Inc.*, 756 F.2d 317 (4th Cir.1985), we considered the collateral estoppel effect of a prior judgment rendered on a general verdict where alternative bases of liability had been submitted to the jury. In an earlier action, a jury had held Eastern liable for a predecessor's debt. The court had instructed it that such liability could be predicated on a theory of either merger or contract. It returned a general verdict against Eastern. Marchant's subsequent action against Eastern was based on the same merger facts, but not on any contract. Marchant sought to make offensive use of the first judgment to collaterally estop a redetermination of the issue of Eastern's liability for its predecessor's debts. We held that because it was not possible to determine on which theory the jury rendered its verdict, the issue was not precluded from trial in a subsequent case. *See also Russell v. Place*, 94 U.S. (4 Otto) 606, 29 L.Ed. 214 (1876); 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4420 (1981).

Here, we must start from the rule established in *Marchant* and earlier cases. The jury was given six theories of liability and instructed that it could base liability on any one or more of them. While it is possible that the jury considered some of the evidence of bodily harm in determining liability, it is equally possible that it based liability in whole or in part on psychological injuries. The trial court instructed the jury that the thrust of the class action was that the jail's conditions inflicted psychological harm on the inmates. We, therefore, cannot conclude with any confidence that the judgment rested in whole or in part on

bodily injury. Moreover, even if we were able to fathom the bases for the jury's finding of liability, we still would not know how the jury allocated the damages to the several injuries. We cannot distill special findings from a general verdict and to do so would intrude on the independent role of a jury as much as would a court's unilateral amendment of its verdict.

Prince William County finally relies on the trial court's consideration of *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), where the Supreme Court held that a plaintiff cannot recover even in the face of a constitutional deprivation unless he or she can prove actual injury. The court in this case instructed the jury that it could not award compensatory damages without first finding actual harm. The County would have us conclude from that instruction that the jury's award necessarily was based on bodily harm to the inmates. To limit "harm" in the *Carey* sense to bodily harm is a restriction found neither in Supreme Court expression nor logic. Explicit in *Carey's* discussion of actual injury is a concept broad enough to include psychological harm, *Id.* at 262–64, 98 S.Ct. at 1051–53, a type of injury the district court here certainly did not bar from the jury's consideration, but rather encouraged. So we return to our original search for the basis of the jury award in this case. It could have been based on psychological injury, bodily injury, or both, and, being unable to ascertain which, or in what proportions, we cannot conclude that the judgment against the County is based on bodily harm covered under the policy.

### III.

Prince William County, however, claims that the damages awarded to the inmates are compensable under the personal injury clause of the insurance contract. The insurance contract's definition of personal injury includes, among other things, false arrest, unlawful detention, and false imprisonment. Prince William County argues that the inmates' detention under unconstitutional conditions amounts to unlawful de-

tention, bringing the judgment within the meaning of personal injury under the policy.

Although Prince William County presented this argument in its motion for summary judgment, the district court did not pass on it, considering only the bodily injury theory. The record is not sufficiently developed for us to consider this contention, and, in any event, it should be entertained in the first instance by the district court. We reverse the summary judgment for the reasons stated, and, without expressing our opinion on the merits of Prince William County's personal injury clause issue, we remand that question to the district court for its consideration.

REVERSED AND REMANDED WITH INSTRUCTIONS.